**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**KEARY BURGER and PHYLLIS BURGER**                                        **PLAINTIFFS**

**VS.**                                    **CIVIL ACTION NO. 1:09cv264-LG-LHW**

**USAA CASUALTY INSURANCE COMPANY**
**and JOHN DOES 1-10**                                                    **DEFENDANTS**

**RESPONSE OF USAA CIC IN OPPOSITION TO PLAINTIFFS' MOTION**
**FOR LEAVE TO AMEND COMPLAINT**

USAA Casualty Insurance Company ("USAA CIC") submits this Opposition to Plaintiffs'

Motion for Leave to Amend their complaint and respectfully shows the court as follows.

**I.      INTRODUCTION**

Plaintiffs' motion seeking to convert their individual Katrina wind-water dispute into a

nationwide class action encompassing each and every USAA CIC property damage claim of any

type occurring over the past eleven years is unsupportable, untimely, and would be an exercise in

futility.  First and foremost, the court should reject the proposed class action amendments as futile.

Federal courts have routinely held that Hurricane Katrina-related first party insurance disputes

concerning alleged claim underpayment cannot satisfy the class requirements of FRCP 23.  These

same courts have likewise repeatedly dismissed more narrowly drawn class action complaints

concerning alleged non-payment of general contractor's overhead and profit (O&P)—Plaintiffs'

proposed focus in this case—finding that the elements of FRCP 23 cannot be satisfied.  This is

particularly true here, where the proposed class allegedly extends back eleven years to 1998, despite

the fact that Mississippi's three-year statute of limitations would bar most of these claims.

Plaintiffs' motion is unsupportable and untimely because Plaintiffs' proposed class definition

and class allegations cannot pass muster under FRCP 12(b)(6) and 9(b), and litigating these untimely

and far-reaching allegations in this case would be unduly prejudicial to USAA CIC.  Plaintiffs' own

proposed pleading debunks the claim in their motion that they "only recently acquired" knowledge

that USAA CIC did not include O&P in its payment to the Burgers.  Their pleading with exhibits

also contradicts itself and disproves the allegations in their proposed complaint that USAA CIC

"actively and fraudulently concealed" information about the payment or non-payment of O&P from

the entire alleged class.  The January 2006  "Repair/Replacement Cost Statement" USAA CIC

provided to the Burgers states that USAA CIC will make payment under the Replacement Cost

Coverage provisions of the Burgers' insurance policy upon completion of repairs and upon

submission of "Receipts/bills from contractors or repair bills showing that repairs have been

completed and indicating the amount paid for those repairs."  The Statement also told the Burgers

that USAA CIC would only consider payment of O&P if it were actually an incurred expense.

Finally, the January 2006 estimate detailing what USAA CIC paid the Burgers is an item-by-item

estimate.  All the Burgers had to do was read it to see that O&P was not one of the line items in their

estimate.

      The prejudice to USAA CIC if the court allows the proposed amendment is clear.  Plaintiffs'

motion comes after the parties have spent significant resources and time addressing Plaintiffs'

individual claims.  This may be Plaintiffs' first request **in this Court** for leave to amend, but it took

the Burgers' very experienced counsel three attempts just to get the Burgers' case filed in the correct

court against the correct defendant.  In other words, Plaintiffs are asking this court to allow them to

file their **fourth complaint**, one which would completely change the character of this litigation by

adding very broad, nationwide class allegations to what has been and should be a straight-forward

individual wind/water Hurricane Katrina claim.

      The court should deny Plaintiffs' request to add these obtuse class allegations and reject

Plaintiffs' attempt to expand the scope of this case, the discovery required, the expenses to be incurred, the time required to litigate, and the burden on this court of dealing with an alleged class claim that fails on its face to meet the requirements of FRCP 23.

## II.    FACTS

### A.    The Burgers' Katrina Claim

USAA CIC issued a homeowners insurance policy to Keary and Phyllis Burger insuring their house at 608 Lewis Avenue, Gulfport, Mississippi.  Hurricane Katrina damaged the house.  USAA CIC had an adjuster inspect that house and hired an engineering firm, EFI Global, to assist in USAA CIC's investigation of the Burger's claim.  The engineering firm and USAA CIC's adjuster determined that storm surge flooding caused the majority of the damage to the house.

Based on its investigation, including EFI Global's report of its investigation, USAA CIC estimated the total wind damage to the dwelling to be $21,428.49, primarily consisting of roof and ceiling damage.  On February 11, 2006, USAA CIC issued payment to the Burgers totaling $16,323.67, representing the actual cash value of wind damage to the dwelling after application of the deductible and depreciation.[1]  USAA CIC's estimate did not include payment of general contractor's overhead and profit since the wind-related damage was limited to the roof and ceilings and, therefore, did not appear to warrant a general contractor's involvement.  *See* Bates Numbered page USAA77 00073, attached to Plaintiffs' Proposed First Amended Class Action Complaint.  Although Plaintiffs now attempt to claim USAA CIC "concealed" that it was not paying for contractor's overhead and profit, the Repair/Replacement Cost Statement USAA CIC explained the basis for USAA CIC's claim payment.  *See* Repair/Replacement Cost Statement attached to

Plaintiffs' Proposed First Amended Class Action Complaint (hereinafter, "Replacement Cost Statement"). The Replacement Cost Statement explained to the Burgers that they could obtain the benefits of the replacement cost coverage provisions of their policy, if upon completion of repairs, the Burgers provided "Receipts/bills from contractors or repair bills showing that the repairs have been completed and indicating the amount paid for those repairs." *Id.*    The Replacement Cost Statement also explicitly notified the Burgers that contractor's O&P was not included in the estimate, and that contractors' O&P *not incurred* would not be included in any supplemental payments:

> **The following items will not be considered in the Supplemental Payment. . . .2. Contractors overhead and profit <u>not incurred</u>. In no event will the Actual Cash Value payment and the Supplemental payment exceed the amount actually and necessarily spent, less the deductible.**

*See id.* (bold original, underlining added). In other words, USAA CIC would not pay O&P as part of the actual cash value payment, but in accordance with the replacement cost provisions of the policy, USAA CIC would pay O&P if the Burgers actually incurred it in the course of making covered repairs.

USAA CIC made additional payments to the Burgers on February 11, 2006, and April 8, 2006, representing additional living expenses and damage to contents that would have potentially been damaged by wind. *See* Exhibit 1.

The Burgers do not allege that they have ever notified USAA CIC of any costs (including contractor's overhead and profit) incurred in the repair or replacement to the structure of their house. They do not allege that they presented any invoices or billings for such construction costs actually

---

[1] USAA CIC's contract with the Burgers provides, in relevant part, that "We will pay no more than the actual cash value of the damage unless: (a) actual repair or replacement is complete." Once the Burgers completed the repairs to their house, USAA CIC would pay the Burgers the amount of recoverable depreciation deducted from the replacement cost to arrive at the actual cash value. If they actually and reasonably incurred contractor's overhead and profit in making the covered repairs, USAA CIC would have paid for that as well.

incurred with regard to seeking the depreciation holdback available under the policy once repairs are actually completed.

**B.     Procedural History of the Burgers' Three Lawsuits**

By letter dated August 1, 2007, the Scruggs Katrina Litigation Group notified USAA CIC that it represented the Burgers with regard to their Katrina damage claim.  *See* Exhibit 2.

On July 2, 2008, the Burgers filed a complaint in the Circuit Court of Hancock County, Mississippi, against United Services Automobile Association ("USAA"), not USAA CIC.  *See* Exhibit 3, Burger Initial Complaint.  In addition to being filed against the wrong company, the suit was improperly joined with a suit regarding an unrelated property owned by an unrelated insured of USAA and was erroneously lodged in Hancock County, rather than Harrison County.  USAA filed a motion for partial summary judgment on grounds that the Burgers were not its insureds.  Ultimately, the parties agreed that the Burgers would re-file their suit in federal court against the proper insurer, USAA CIC.

Instead, nearly 4 ½ months later, on September 12, 2008, (and before the Hancock County suit was dismissed) the Burgers filed a Complaint naming USAA CIC as the defendant.  However, they filed it in Harrison County Circuit Court rather than in federal court, and they directed their summons and service of process to USAA, not USAA CIC.  *See* Exhibit 4, Burgers' Second Complaint and Summons.  Plaintiffs never served USAA CIC with the action and USAA CIC never appeared in the action.  USAA moved to dismiss.

The parties then agreed to dismiss the Harrison County suit and that the Burgers' would finally re-file their action in federal court against USAA CIC.  To get this dispute filed in the right court with the correct parties, USAA CIC agreed to waive any statute of limitations defense as to the Burgers' individual complaint.

The Burgers' filed their initial complaint in this Court on April 15, 2009. Next, the parties submitted an Agreed Order dismissing the Burgers' Hancock County suit against the wrong insurer, which the court entered on May 1, 2009. *See* Exhibit 5, Agreed Order of Dismissal. Similarly, the parties reached an Agreed Order entered on April 29, 2009 dismissing the Burger's unserved Harrison County suit. *See* Exhibit 6, Agreed Order of Dismissal.

The parties have mediated the Burgers' claim on three occasions, but have not succeeded in resolving it.

**C.    The Burgers' Motion for Leave and Proposed Amendments**

**1.    The Proposed Individual Claim Amendments**

Although the Burgers' motion for leave to amend discusses only the proposed class amendments, the proposed amended pleading also contains new features as to the Burgers' individual claim. Those are:

- Paragraphs 44, 70, 90, and 112 asserting that USAA CIC's anti-concurrent causation clause is ambiguous and unenforceable and that USAA CIC had no right to rely on it in adjusting their claim; and

- Paragraphs 24, 71, 91, and 113 asserting that USAA CIC improperly failed to pay the Burgers general contractor's overhead and profit.

With regard to the Burgers' individual claim for recovery of overhead and profit, paragraph 24 contains the proposed factual allegations and states:

24.    Although Plaintiffs fulfilled any and all obligations imposed upon them under their Policy, DEFENDANTS failed to properly pay Plaintiffs for all loss or damage to Plaintiffs' dwelling and personal property contained therein. Plaintiffs should have received payment for general contractor's overhead and profit with their initial payment from DEFENDANTS. Although the services of a general contractor were anticipated and required because of the loss and damage to Plaintiffs' dwelling, DEFENDANTS made no payment to Plaintiffs for general contractor's overhead and profit. DEFENDANTS frequently and arbitrarily fail to make payments for general contractor's overhead and profit when paying their insureds' claims for loss or damage to dwellings in Mississippi and throughout the United States.

*See* Proposed Amended Class Action Complaint at pp. 6-7, ¶ 24. Nowhere do the Burgers allege that USAA CIC concealed from them the fact that general contractor's overhead and profit was not paid with their initial payment. In fact, they cannot make such an allegation, as USAA CIC's Repair/Replacement Cost Statement, which the Burgers attached to their own proposed amendment (quoted in the original bold print, *supra*), expressly advised them that general contractor's overhead and profit was not included.

### 2.    The Proposed Class Action Amendments

In the proposed class amendment, the Burgers seek to represent a national class of insureds extending back nearly 11 years to August 1998, encompassing persons who received dwelling loss payments from USAA[2] that did not include general contractor's overhead and profit. Alternatively, the Burgers seek to represent a class of such persons within the State of Mississippi. Federal courts have routinely held that allegations concerning failure to pay O&P in the first party insurance arena are inappropriate for class treatment. Resolution of such questions necessarily involves a detailed inquiry into the individualized facts and circumstances of each purported class member's unique property damages and claims, which will overwhelm any arguably common issues. As a matter of law, plaintiffs cannot satisfy the requirements for a class action, because there never can be any predominating common issues here.

Additionally, Plaintiffs' effort to invoke the doctrines of fraudulent concealment and equitable estoppel in order to save their proposed class amendment from a statute of limitations bar fails because they plead no facts whatsoever to support their claims of fraudulent conduct and/or

---

[2]    Although the class allegations at paragraph 113 refer only to USAA, that company is not a defendant in this case. USAA CIC is the only defendant. The proposed amendment does not seek to add USAA as an additional party. For purposes of this opposition, USAA CIC presumes Plaintiffs meant to reference it as the only defendant. If that is, however, incorrect, then USAA CIC objects to any attempted addition of USAA as a party. For the same reasons the amended pleading should not be allowed with regard to USAA CIC, it should not be allowed as to USAA.

inequitable conduct such as would toll the applicable statute of limitations. *See* Proposed Amendment to add class allegations at ¶¶ 140-145.

As demonstrated below, the Burgers' proposed amendment to add class allegations is futile and unduly prejudicial to USAA CIC, so the court should deny Plaintiffs' motion for leave to amend.

## III.    THE COURT SHOULD DENY PLAINTIFFS' MOTION FOR LEAVE TO AMEND

### A.    The Standard For Obtaining Leave to Amend Pursuant to Fed. R. Civ. P. 15(a)

Rule 15(a)(2) provides that leave to amend a pleading should be freely allowed "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Fifth Circuit has recognized that, although Rule 15 evidences a "bias" in favor of leave to amend, a party is not automatically entitled to such leave. *Goldstein v. MCI Worldcom*, 340 f.3d 238, 254 (5th Cir. 2003); *Jones v. Robinson Property Group*, 427 F.3d 987, 994 (5th Cir. 2005)(leave to amend not automatic despite language of Rule 15). Substantial reasons exist that dictate denial of a proposed amendment when it would be futile or when it would unduly prejudice the opposing party. *Jones*, 427 F.3d at 994.

"Futility" is defined as inability of the proposed amended pleading to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000). A proposed amendment that would be barred by the applicable statute of limitations is futile. *Whitt v. Stephens County*, 529 F.3d 278, 282 (5th Cir. 2008).

### B.    The Proposed Class Amendment Is Futile.

#### 1.    O&P Class Actions Cannot Satisfy the Requirements of FRCP 23.

As the Fifth Circuit has recently reiterated, where a complaint cannot meet the requirements of Rule 23 of the Federal Rules of Civil Procedure on its face, it is appropriate for a Court to strike the class action allegations at an early stage of Katrina-related class action proceedings filed against insurers. *See John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443 (5th Cir. 2007). Indeed, in case after

case, federal courts called upon to address class action suits against insurance companies related to their alleged underpayment of Hurricane Katrina claims have dismissed those allegations in response to motions to strike and/or motions to dismiss the class allegations.    *See, e.g., In Re Katrina Canal Breaches Consolidated Litigation*, 2009 WL 1707923, (E.D. La.  June 16, 2009); *Aguilar v. Allstate Fire & Cas. Ins. Co.*, 2007 WL 734809. at *3 (E.D. La. Mar. 6, 2007) (Feldman, J.); *Spiers v. Liberty Mut. Fire Ins. Co.*, 2006 WL 4764430, at *2 (E.D. La. Nov. 21, 2006) (Feldman, J.); *Henry v. Allstate Ins. Co.*, 2007 WL 2287817, at *7 (E.D. La. Aug. 8, 2007) (Feldman, J.); *Chetta v. State Farm and Cas. Co.*, 2007 WL 1233546, at *1 (E.D. La. Apr. 25, 2007) (Livaudais, J.); *Caruso v. Allstate Ins. Co.*, 2007 WL 2265100, at *3-5 (E.D. La. Aug. 3, 2007) (Vance, J.); *Escoe v. State Farm Fire & Cas. Co.*, 2007 WL 2903048, *3 (E.D. La.  Sept. 27, 2007) (Berrigan, J.); *Terrebonne v. Allstate Ins. Co.*, 251 F.R.D. 208, 211 (E.D. La. 2007) (Vance, J.).

Of specific import to this matter, federal courts reviewing more narrowly drafted class action allegations addressing an alleged non-payment of O&P also have repeatedly dismissed those class action allegations as well.  *See Nguyen v. St. Paul Travelers, 2008 WL 4534395* (E.D. La. Oct. 6, 2008) (Vance, J.) (granting The Standard Fire Insurance Company's motion to strike class allegations and dismissing class allegations regarding alleged non-payment of O&P); *Nguyen v. St. Paul Travelers Ins. Co., 2008 WL 4691685* (E.D. La. Oct. 22, 2008) (Vance, J.) (denying consolidated plaintiff Billy Melancon's motion for class certification against State Farm for having allegedly underpaid O&P); *John v. Nat. Sec. Fire & Cas. Co.*, 2006 WL 3228409 (W.D. La. Nov. 3, 2006) (Trimble, J.), *aff'd,* 501 F.3d 443 (5th Cir. 2007) (granting insurer's motion to strike class allegations regarding alleged non-payment of O&P); *Murray v. Liberty Mutual Fire Insurance Company*, unpublished No. 07-3564, (E.D. La. Feb. 21, 2008) (Beer, J.) [Rec. Doc. 33] (same); *Nguyen v. St. Paul Travelers Ins. Co.*, unpublished No. 06-4130, (E.D. La. Feb. 25, 2009 (same)

[Rec. Doc. 428].

As a matter of law, the determination of whether overhead and profit is owed at the time an actual cash value payment is made on a particular insurance claim is a case-by-case determination based on the specific facts of each individual claim *Id*.  As one federal court observed:

> Whether the nature of an insured's damages indicates that he or she is reasonably likely to require the services of a general contractor is a factual question, requiring individualized assessments. Accordingly, **there is no "class-wide proof available" to decide whether the nature of each insured's damages were such that the insured was reasonably likely to require the services of a general contractor**. *See, e.g., Gene And Gene LLC v. Biopay LLC*, 541 F.3d 318, 2008 WL 3511766 (5th Cir.2008). Standard Fire proffers the following example. In a case where the insured suffered roof damage during Hurricane Katrina, the damage might require roof repairs, repairs to ceiling panels, and repairs to carpet damage. This indicates that three separate trades would be required, including a roofer, handyman, and carpet company. Standard Fire contends that an insured would not require a general contractor to coordinate this work. On the other hand, extensive damage to the roof of a large commercial building might be the type of job that would require roofers alone, but would still require the supervision of a general contractor because of the complexity and scope of the work. **The determination of whether the services of a general contractor would be reasonably likely to be required** in these two examples **is a fact question, that will be different for every insured. This kind of case-by-case determination is inappropriate for class treatment.** *See John v. Nat'l Sec. Fire & Cas. Co.*, 2008 WL 394220 (W.D.La.2008) ("This Court finds that a case by case factual inquiry would have to be made regarding the type, nature and complexity of the necessary repairs before it can be determined if a general contractor is warranted. Such an individualized inquiry would necessarily prevent this type of claim from being certified as a class."); *see also Mills*, 511 F.3d at 1306 (finding that plaintiffs "would not be entitled to receive payment for any type of cost charged by a general contractor without showing that they would be reasonably likely to need a general contractor for the repairs in issue."); *Mee*, 908 A.3d at 350 ("whether use of a general contractor is reasonably likely depends on the nature and extent of the damage and the number of trades needed to make repairs. This last principle necessarily requires consideration of the degree of coordination or supervision of trades required to make the repairs.").

*Nguyen v. St. Paul Travelers Ins. Co., 2008 WL 4691685* (E.D. La. Oct. 22, 2008), *9 (Vance, J.)(emphasis added)    Thus, individualized issues will predominate concerning the nature and extent of the covered damage to each class member's property.

At a more fundamental level, simply ascertaining if there is a "class" and who would be a member of the purported class requires a detailed, claimant-by-claimant factual analysis. Here, simply to determine whether a policyholder is a member of the putative class, the Court would need to determine:

(1)    whether the insurance policy issued to the policyholder fits within the scope of the class (i.e., "an actual cash value or actual cash value with replacement cost endorsement policy");

(2)    whether the policy was in effect at the time of the loss;

(3)    whether overhead and profit was included in the loss payment;

(4)    whether the policyholder elected to make the claim on an actual cash value basis or a replacement cost basis;

(5)    the nature and extent of the covered damage and the repairs needed to remedy the covered damage;

(6)    whether it would have been reasonable and necessary for the policyholder to use the services of a general contractor to complete repairs of the covered damage;

(7)    whether USAA CIC has a viable defense to the policyholder's claim based on the unique circumstances of the claim (e.g., appraisal, release, failure to comply with the insured's duties under the policy, fraud or misrepresentation, overpayment of another part of the claim, applicability of a deductible or policy limits, etc.)

Not only would a detailed review of each claim file be required, but in most instances, a jury would need to hear evidence and resolve disputed issues of fact to identify who is in the alleged "class." All of these issues would need to be resolved at the outset of a class action simply to identify who the class members are. Because the alleged "class" is not ascertainable without an individualized factual inquiry, Plaintiff's proposed amendment is clearly inappropriate for class treatment under FRCP 23.

> **2.    Mississippi's Three-Year Statute of Limitations Would Bar Most Claims.**

The Burgers seek to represent a class of persons going back nearly 11 years to August 1998. The primary claim on which they seek to represent such a class is a breach of contract claim in which they allege that USAA CIC wrongfully failed to pay general contractor's overhead and profit on dwelling damage claims during that period. *See* Proposed Class Amendment at ¶¶ 148-152. There is also a proposed amended class claim for unjust enrichment. *See* Proposed Amendment at ¶¶ 153-162.

Mississippi's statute of limitations is three years for breach of contract actions. Miss. Code Ann. §15-1-49 (3-year limitation applies where no other period provided); *Mitchell v. Progressive Ins. Co.*, 965 So. 2d 679, ¶13 (Miss. 2007). The same statute of limitations applies to claims of unjust enrichment. *Kersey v. Fernald*, 911 So. 2d 994, ¶¶5, 7-8 (Miss. App. 2005).

With regard to any Mississippi claimants, this three-year statute of limitations would clearly apply. Because Plaintiffs seek to file this class action in a Mississippi federal court, the three-year limitations period also would apply as to the vast majority of persons in the nation. Mississippi views statutes of limitations as procedural and, therefore, applies its own statutes of limitations to suits filed here. *Huss v. Gayden*, 2009 WL 1609390, *6 (5th Cir. June 10, 2009); *Allison v. ITE Imperial Corp.*, 928 F.2d 137, 144 (5th Cir. 1991).[3]

Individuals who might have made claims regarding non-payment of general contractor's overhead and profit who have not done so, and as to whom the applicable statute of limitations has expired, cannot be part of a class. Filing a class action does not and cannot resurrect claims for which the statute(s) of limitation have expired. *Beavers v. Metropolitan Life Ins. Co.*, 566 F.3d 436, 438-39, 441 (5th Cir. 2009) (filing of class action suit does not resurrect claims as to which statute of

---

[3] The one exception to this rule is if the state which is "the center of gravity" for a particular claim has a substantive statute of repose, rather than a procedural statute of limitations, then the other state's statute of repose would apply. *Wayne v. Tennessee Valley Auth.*, 730 F.2d 392, 400-01 (5th Cir. 1984). Plaintiffs do not point to any state whose law allows breach of contract actions as much as 11 years or more after the alleged breach.

limitations has expired); *Taylor v. United Parcel Service*, 554 F.3d 510, 519 (5th Cir. 2008) (persons whose claims were time-barred could not be class members) (citing *Calderon v. Presido Valley Farmers Assoc.*, 863 F.2d 384, 390 (5th Cir. 1989)); *Ballen v. Prudential Bache Securities, Inc.*, 23 F.3d 335, 337 (10th Cir. 1994) (class action suit does not resurrect time-barred claim).

Plaintiffs' initial federal complaint in this case was filed April 15, 2009, some 3 years and 7 ½ months after Katrina, and more than 3 years after payment of their own claim.  It survives only because USAA CIC agreed not to assert the statute of limitations as a defense to the Burgers' *individual* claim if they would finally file it in the correct court against the correct defendant.

The proposed class amendment does not relate back under Fed. R. Civ. P. 15(c)(1) to the date of the initial complaint, as the proposed class amendment does not arise out of the same conduct, occurrence, or transaction as the initial complaint, i.e., it does not arise out of handling of the Burgers' individual Katrina claim under their insurance contract with USAA CIC.  Fed. R. Civ. P. 15(c)(1).  However, even if the proposed amendment were analyzed under a theory that, if allowed, it would relate back to the April 15, 2009, filing of the Burgers' third complaint, no persons whose claims arose before April 15, 2006, could possibly be included in any class.

Therefore, the proposed class amendment is futile.  The applicable statute of limitations would prevent existence of any such class as that described by the proposed amendment.  *Whitt*, 529 F.3d at 282 (proposed amendment barred by statute of limitations is futile).

### 3.    Plaintiffs' Proposed Pleading of Fraudulent Concealment and Equitable Estoppel Cannot Avoid the Statute of Limitations Bar.

Apparently recognizing this obvious statute of limitations bar, Plaintiffs' proposed class amendment includes allegations regarding fraudulent concealment tolling and equitable tolling. *See* Proposed Class Amendment at ¶¶ 140-145. However, the allegations of fraudulent concealment and equitable tolling are cursory and conclusory. They do not meet the specificity standards of Fed. R. Civ. P. 9(b). They could not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

### a.    Plaintiffs' Pleading Fails to Meet the Standards of Federal Rules 12(b)(6) and 9(b).

A complaint should be dismissed under Rule 12(b)(6) when it fails "to state a claim on which relief can be granted." Fed. R. Civ. P. 12(b)(6). The United States Supreme Court has eliminated the lax Rule 8 pleading standards formerly applied under *Conley v. Gibson. Pacific Bell Tel. Co. v. Linkline Communications, Inc.*, ___ U.S. ___, 129 S.Ct. 1109, 1123 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007)). To survive a motion to dismiss under the standard set forth by the Supreme Court in *Twombly*, a plaintiff must plead "'enough facts to state a claim to relief that is plausible on its face.'" *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 206 (5th Cir. 2009) (quoting *Twombly* and *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).

To be sufficient, a complaint is required to plead specifics. *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). Conclusory allegations, unwarranted factual inferences, and legal conclusions stated as fact are not accepted as true and are insufficient to carry a complaint past a motion to dismiss. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949-50 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). *See also Brackens v. Ennis State Bank*, 252 F.3d 434, 2001 WL

360647, *2 (5th Cir. March 12, 2001) (citing *Fernandez-Montez v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertions[s]" devoid of "further factual enhancement." *Id.* at 557, 127 S.Ct. 1955.

*Ashcroft*, 129 S.Ct. at 1949 (quoting *Twombly*).

Complaints that contain allegations of fraud are subject to even stricter pleading requirements under Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Flaherty and Crumrine*, 565 F.3d at 206-07. In other words, a plaintiff must plead the "who, what, when, where, and how of the alleged fraud." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997). A dismissal for failure to meet Rule 9(b)'s requirements is treated as a dismissal for failure to state a claim. *Flaherty and Crumrine*, 565 F.3d at 206.

### b.    Plaintiffs Do Not And Cannot Adequately Plead Fraudulent Concealment.

With regard to fraudulent concealment, Miss. Code Ann. §15-1-67 provides:

> If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.

Miss. Code Ann. §15-1-67 (Rev. 2003). The Mississippi Supreme Court has held that, to prevail on a claim of fraudulent concealment to toll a statute of limitations, the party asserting it must meet a two-part test.

> [T]he party purporting to show that there was fraudulent concealment must show that '(1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) due diligence was performed on their part to discover it.

*Channel v. Loyacono*, 954 So. 2d 415, ¶ 29 (Miss. 2007) (quoting *Stephens v. Equitable Life Assur. Soc. of U.S.*, 850 So. 2d 78, 84 (Miss. 2003)).  The affirmative act in question must be shown to be one that was designed to prevent the plaintiff from discovering the claim.  *Channel*, 954 So. 2d at ¶ 29.  *See also Peavey Electronics Corp. v. Baan U.S.A., Inc.*, 2008 WL 921438, ¶ 15 (Miss. App. 2009) (same).

The Burgers' proposed class action amendments contain only a bare-bones conclusory allegation of fraudulent concealment, claiming that it would apply to toll the applicable statute of limitations and make a class such as that described in the proposed amendment viable.  It does not even come close to factual pleading of the elements required for a claim of fraudulent concealment. *Ballen v. Prudential Bache Securities, Inc.*, 23 F.3d 335, 337 (10th Cir. 1994) (fraudulent concealment pleading requires Rule 9(b) specificity).  Specifically, the proposed amendment alleges:

> 140.  DEFENDANTS had a duty to disclose to Plaintiffs and Class Members (collectively "Class Plaintiffs" sometimes hereafter) their entitlement to general contractor's overhead and profit.
>
> 141.  Rather than disclose this information, DEFENDANTS actively and fraudulently concealed DEFENDANTS' obligation to pay O & P on the Class Plaintiffs' claims.
>
> 142.  Although Class Plaintiffs acted with due diligence, they were prevented from discovering their claims by DEFENDANTS' fraudulent concealment. DEFENDANTS' fraudulent concealment tolls the running of any applicable statutes of limitations.

*See* Proposed Class Action Amendment at ¶¶ 140-142.  There are no factual allegations whatsoever, much less any factual allegations rising to the level of Rule 9(b) specificity.  Plaintiffs do not allege any affirmative action taken by USAA CIC to attempt to conceal from them a cause of action concerning payment of general contractor's overhead and profit.  They do not allege when such an

affirmative act occurred, or how it occurred.  *Channel*, 954 So. 2d at ¶30 (conclusory assertion of fraudulent concealment with no showing of affirmative act designed to conceal has no merit).  The Burgers do not allege any facts whatsoever about how they, or Class Plaintiffs, were duly diligent in trying to discover such a cause of action.

Proposed paragraph 140's bald assertion of an obligation on USAA CIC's part to disclose some entitlement to general contractor's overhead and profit is, notably, a legal conclusion – not a factual pleading to be taken as true for purposes of a motion to dismiss.  Mississippi law does not impose any such fiduciary duties of disclosure on parties to an insurance contract.  *Taylor v. Southern Farm Bureau Cas. Co.*, 954 So. 2d 1045, ¶¶ 6, 12 (Miss. App. 2007) (insurance relationship is arms length contractual relationship; no duty to disclose claim valuation practices).  Additionally, Mississippi has no statute or case law requiring an insurer to include general contractor's overhead and profit as part of an actual cash value claim payment.

Furthermore, as the purported class representatives, the Burgers cannot meet the pleading test of the elements of fraudulent concealment.  The documents attached to the proposed amended complaint demonstrate that USAA CIC directly informed the Burgers they were not being paid overhead and profit and that it would not be paid unless actually incurred.  The Burgers have had these documents since early 2006.  The Burgers have had their own counsel since at least August 2007.  With these undisputed facts, the Burgers simply cannot credibly allege that USAA CIC concealed anything from them, or any other purported class member concerning the payment or non-payment of overhead and profit.  Likewise, they cannot allege USAA CIC took any such action with a design to prevent discovery of a claim or that the Burgers somehow could not have diligently discovered it, when the Burgers attached a document to their proposed amended complaint that conclusively disproves there was any concealment.

In sum, the fraudulent concealment allegations in Plaintiffs' proposed class amendment do not meet the requirements of Rule 9(b). Therefore the entire proposed class amendment should be dismissed under Rule 12(b)(6). The class as defined in the proposed amendment cannot exist because of the time-bar of the statute of limitations.

### c.    Plaintiff's Proposed Amendment Fails To Adequately Plead Equitable Estoppel.

Equitable estoppel only operates to toll applicable limitations statutes if there is a (1) belief and reliance on some representation; (2) a change of position as a result thereof; and (3) detriment or prejudice caused by the change of position. *Mitchell v. Progressive Ins. Co.*, 965 So. 2d 679, ¶ 17 (Miss. 2007). Additionally, "'inequitable or fraudulent conduct *must* be established to estop a party from asserting a statute of limitations defense.'" *Id.* (emphasis in original) (quoting *Miss. Dept. of Public Safety v. Stringer*, 748 So. 2d 662, 665 (Miss. 1999)). As to the first element of a claim of equitable estoppel, an inducement not to file a cause of action within the statute of limitations bar "'may consist of either an express representation that the claim will be settled without litigation or conduct that suggests a lawsuit is not necessary.'" *Peavey Electronics Corp.*, 2009 WL 921438 at ¶ 19 (quoting *Stringer*, 748 So. 2d at 665). The remedy is extraordinary and should only be applied in egregious cases. *Peavey Electronics Corp.* at ¶ 18; *Meredith v. Meredith*, 987 So. 2d 477, ¶ 24 (Miss. App. 2008). An allegation of a mere breach of contract is not sufficient. *Mitchell*, 965 So. 2d at ¶16, 18 (allegation of "stonewalling" on insurance claim held insufficient).

Similar to the fraudulent concealment allegations, the proposed class action amendment only contains a cursory and conclusory pleading regarding equitable estoppel, as follows:

> 143.  DEFENDANTS concealed from Class Plaintiffs their entitlement to general contractor's overhead and profit.

144.    DEFENDANTS' concealment prevented Class Plaintiffs from ascertaining that they were entitled to general contractor's overhead and profit and from asserting their rights.

145.    The statute of limitations applicable to Class Plaintiffs' claims should be equitably tolled.    Alternatively, as a consequence of DEFENDANTS' concealment of Class Plaintiffs' entitlement to general contractor's overhead and profit, DEFENDANTS should be equitably estopped from asserting a statute of limitations as a defense to any of the Class Plaintiffs' claims.

*See* Proposed Class Action Amendment at ¶¶ 143-145.  The pleading is conclusory as to entitlement to overhead and profit.  It is conclusory as to its other allegations.  It pleads no facts to support the elements required for equitable estoppel.  Just as with the allegation of fraudulent concealment, there is no factually pleaded basis on which these allegations can be held sufficient under Rule 9(b) or Rule 12(b)(6).

Because the tolling allegations of the proposed amendment are completely insufficient, the amendment is futile in that the statute of limitations bar prevents the existence of a class as defined by the proposed amendment.

### C.    The Proposed Class Amendment Would Be Unduly Prejudicial.

Although Plaintiffs filed their motion for leave to amend within this Court's scheduling order deadline, the motion for leave comes long after the Burgers initiated litigation on this claim by filing their first complaint on July 2, 2008.  For over a year, this claim and the mediations between the parties concerning it have focused on a wind-water dispute over the Burgers' individual Gulfport property and individual Katrina claim.

Plaintiffs' fail to disclose in their motion for leave to amend the how, why, or what of the information allegedly recently discovered, or how it could only have been recently discovered. Thus, their boilerplate allegation that they have only recently "discovered that USAA CIC frequently and arbitrarily fails to make payment for general contractor's overhead and profit when paying its

insureds' claims for loss or damage to dwellings in Mississippi and throughout the United States" is simply inadequate. Concerning their own claim, the Burgers have known since 2006, and their lawyers have known since August 2007 that USAA CIC's estimate for dwelling damage did not include general contractor's overhead and profit and expressly stated O&P would not be paid unless incurred during repair or replacement of covered damage to the dwelling.

Changing this case into a class action on the sub-issue of overhead and profit will substantially increase the time needed for discovery and require an expanded and different scheduling order. Pursuant to Uniform Local Rule 23.1, the parties would be required to give priority to discovery relating to any motion for class certification, and litigation of the class certification issue is likely to be lengthy and expensive. The proposed amendments will derail this case from a standard track, Katrina wind-water dispute, into a complex alleged class action.

The equities clearly support denying leave to amend to add the proposed class allegations. The amendment is unduly prejudicial to USAA CIC, but there is no prejudice to the Burgers from denial of the amendment. Under the auspices of their initial federal complaint, which already alleges breach of contract, the Burgers can litigate their own individual overhead and profit claim. They cannot demonstrate that they have any real interest in attempting to represent a class.

The Burgers have had three previous opportunities to file and amend their complaint. The Court should not and need not give them a fourth chance to expand this case far beyond their own claim. Because allowing the proposed class action amendment would be unduly prejudicial to USAA CIC, would be an exercise in futility, and would unnecessarily expand this litigation, leave to amend should be denied.

**IV.    <u>CONCLUSION</u>**

For the foregoing reasons, USAA CIC respectfully requests that Plaintiffs' motion for leave to amend and file their proposed first amended class action complaint be denied. As the reasons and authorities supporting USAA CIC's opposition are fully stated in this response, USAA CIC further asks that the Court's Uniform Local Rule 7.2(D) requirement of submission of a separate memorandum be waived.

This 21st day of August, 2009.

USAA CASUALTY INSURANCE COMPANY


By:_____/s/ Janet G. Arnold_____

CHARLES G. COPELAND (MBN 6516)
W. SHAN THOMPSON (MBN 9445)
JANET ARNOLD (MBN 1626)
JAMES D. BOONE (MBN 102377)
ATTORNEYS FOR DEFENDANT

OF COUNSEL:

**COPELAND, COOK, TAYLOR AND BUSH, P.A.**
1076 Highland Colony Parkway
600 Concourse, Suite 100 - 39157
Post Office Box 6020
Ridgeland, MS 39158
Telephone: (601) 856-7200
Facsimile: (601) 856-7626

## <u>CERTIFICATE OF SERVICE</u>

I, Janet G. Arnold, do hereby certify that I have this date electronically filed the

foregoing document with the Clerk of the Court using the ECF system which sent notification of

such filing to the following:

Don Barrett, Esq.
BARRETT LAW OFFICE
P.O. Box 987
Lexington, MS 39095

Dewitt M. Lovelace, Esq.
Alex Peet, Esq.
LOVELACE LAW FIRM, P.A.
36474 Emerald Coast Parkway, Suite 4202
Destin, FL 32541

Thomas P. Thrash, Esq.
THRASH LAW FIRM
101 Garland Street
Little Rock, AR 72201-1214

This the 21st day of August, 2009.

s/Janet G. Arnold
JANET G. ARNOLD