**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

---

**KEARY BURGER and
PHYLLIS BURGER**                                                        **PLAINTIFFS**

**VS.**                                          **CIVIL ACTION NO. 1:09cv264-LG-LHW**

**USAA CASUALTY INSURANCE COMPANY
and JOHN DOES 1-10**                                                    **DEFENDANTS**

---

**DEFENDANT USAA CASUALTY INSURANCE COMPANY'S
MEMORANDUM IN SUPPORT OF ITS
MOTION TO STRIKE THE CLASS ACTION ALLEGATIONS**

---

# TABLE OF CONTENTS

Page

*Preliminary Statement* ................................................................................................. 1

I.    FACTUAL AND PROCEDURAL BACKGROUND ............................................. 2

    A.    Original Complaint .................................................................................. 2

    B.    First Amended Class Action Complaint ("FAC") ..................................... 3

    C.    Documents Attached To The FAC ............................................................ 4

II.    PLAINTIFFS FAIL TO PLEAD AN ASCERTAINABLE CLASS ....................... 5

III.    PLAINTIFFS FAIL TO PLEAD A CLASS CAPABLE OF RULE 23
    CERTIFICATION ................................................................................................ 7

    A.    Common Issues Of Law Do Not Predominate ........................................ 10

        1.    The Court cannot constitutionally apply Mississippi law to
            the claims of all class members. ................................................... 10

        2.    In the face of a conflict with Mississippi law, the Court
            must apply the law of the state in which the property
            covered by the homeowners policy issued by USAA CIC is
            located. ......................................................................................... 11

        3.    Material differences between the applicable states' laws
            prevent certification of a national class. ....................................... 12

    B.    Common Issues Of Fact Do Not Predominate .......................................... 20

    C.    A Class Action Is Not A Superior Mode of Adjudication ......................... 23

*Conclusion* ................................................................................................................ 23

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aguilar v. Allstate Fire & Cas. Ins. Co.*
 No. 06-4660, 2007 WL 734809 (E.D. La. 2007).................................................4, 7

*Allen-Wright v. Allstate Ins. Co.*
 No. 07-cv-4087, 2008 WL 5336701 (E.D. Pa. Dec. 17, 2008)..............................23

*Allison v. Citgo Petroleum Corp.*
 151 F.3d 402 (5th Cir. 1998) ...................................................................................9

*Allstate Ins. Co. v. Hague*
 449 U.S. 302 (1981)...........................................................................................10, 11

*Amchem Prods., Inc. v. Windsor*
 521 U.S. 591 (1997)..................................................................................................9

*Bank One, Tex. & Fed. Deposit Ins. Corp. v. Taylor v. Worth Operating, Inc.*
 970 F.2d 16 (5th Cir. 1992) ....................................................................................22

*Cantu v. Jackson Nat. Life Ins. Co.*
 579 F.3d 434 (5th Cir. 2009) ..................................................................................11

*Caruso v. Allstate Ins. Co.*
 No. 06-2613, 2007 WL 2265100 (E.D. La. Aug. 3, 2007)........................................7

*Castano v. Am. Tobacco Co., Inc.*
 84 F.3d 734 (5th Cir. 1996) ...............................................................10, 18, 20, 23

*In re Conagra Peanut Butter Prod. Liab. Litig.*
 251 F.R.D. 689 (N.D. Ga. 2008)............................................................................15

*DeBremaecker v. Short*
 433 F.2d 733 (5th Cir. 1970) ...................................................................................5

*Eisen v. Carlisle & Jacquelin*
 417 U.S. 156 (1974)..................................................................................................7

*Hedgepeth v. Blue Cross Blue Shield of Miss.*
 No. 1:05CV142-D-A, 2006 WL 141624 (N.D. Miss. 2006) ................................5, 6

*Henry v. Allstate Ins. Co.*
 No. 07-1738, 2007 WL 2287817 (E.D. La. Aug. 8, 2007)........................................7

*John v. Nat'l Sec. Fire Ins. Co.*
 501 F.3d 443 (5th Cir. 2008) ...................................................................................6

*John v. Nat'l Sec. & Fire Cas. Co.*
 No. 06-1407, 2008 WL 394220 (W.D. La. Feb. 12, 2008)................................8, 21

*Jones v. Nat'l Sec. Fire & Cas. Co.*
 No. 06-1407, 2006 WL 3228409 (W.D. La. Nov. 3, 2006)...............................8, 21

*In re Katrina Canal Breaches Consol. Litig.*
    No. 05-4182, 2009 WL 1707923 (E.D. La. June 16, 2009)......................................7

*Markey v. Louisiana Citizens Fair Plan*
    No. 06-5473, 2008 WL 5427708 (E.D. La. Dec. 30, 2008) ...................................7

*Mills v. Foremost Ins. Co.*
    511 F.3d 1300 (11th Cir. 2008) .......................................................................18

*Nguyen v. St. Paul Travelers Ins. Co.*
    No. 06-4130, 2008 WL 4534395 (E.D. La. Oct. 6, 2008) ...................................7, 8, 9, 18, 21

*Nguyen v. St. Paul Travelers Ins. Co.*
    No. 06-4130, 2008 WL 4691685 (E.D. La. Oct. 22, 2008) ...............................21, 22

*Nguyen v. St. Paul Travelers Ins. Co.*
    No. 6-4130, 2009 WL 23677 (E.D. La. Jan. 25, 2009)................................8, 18, 21

*Norwicz v. Markel Int'l Ins. Co.*
    No. 1:08CV602, 2009 WL 2500195 (S.D. Miss. 2009) ........................................19

*Parkway Assoc. LLC v. Harleysville Mut. Ins. Co.*
    129 Fed. App'x. 955 (6th Cir. 2005) ...................................................................18

*Peoples v. Am. Fidelity Life Ins. Co.*
    176 F.R.D. 637 (N.D. Fla. 1998) .......................................................................18

*Phillips Petroleum Co. v. Shutts*
    472 U.S. 797 (1985).......................................................................................10, 11, 12

*Rivera v. Bio Engineered Supplements & Nutrition, Inc.*
    No. SACV 07-1306, 2008 WL 4906433 (C.D. Cal. Nov. 13, 2008)................................15, 16

*Schafer v. State Farm Fire & Cas. Co.*
    No. 06-8262, 2009 WL 2391238 (E.D. La. Aug. 3, 2009)...................................20

*Snellen v. State Farm Fire & Cas. Co.*
    675 F. Supp. 1064 (W.D. Ky 1987)................................................................18, 22

*Spiers v. Liberty Mut. Fire Ins. Co.*
    No. 6-4493, 2006 WL 4764430 (E.D. La. Nov. 21, 2006) ....................................7

*Terrebonne v. Allstate Ins. Co.*
    251 F.R.D. 208 (E.D. La. 2007)..........................................................................7

*Thompson v. Bayer Corp.*
    No. 4:07CV00017, 2009 WL 362982 (E.D. Ark. Feb. 12, 2009).................................15

*Thompson v. Jiffy Lube Int'l, Inc.*
    250 F.R.D. 607 (D. Kan. 2008).........................................................................15

*Unger v. Amedisys Inc.*
    401 F.3d 316 (5th Cir. 2005) ...........................................................................9

*Vulcan Golf, LLC. v. Google, Inc.*
    254 F.R.D. 521 (N.D. Ill. 2008)........................................................................15

*Unity Commc'ns, Inc. v. AT&T Mobility, LLC*
   ---F. Supp. 2d---, No. 2:03cv115KS-MTP, 2009 WL 2169199 (S.D. Miss. 2009)................22

## STATE CASES

*Anderson v. Cont'l Ins. Co.*
   271 N.W.2d 368 (Wis. 1978).................................................................................14

*Best Place, Inc. v. Penn Am. Ins. Co.*
   920 P.2d 334 (Haw. 1996)...................................................................................13

*Boardman v. United Serv. Auto. Ass'n*
   470 So. 2d 1024 (Miss. 1985)..........................................................................11, 12

*Chandler v. Prudential Ins. Co.*
   715 S.W.2d 615 (Tenn. Ct. App. 1986)................................................................13

*Clark v. DaimlerChrysler Corp.*
   706 N.W.2d 471 (Mich. App. 2005)....................................................................17

*Cramer v. Ins. Exch. Agency*
   675 N.E.2d 897 (Ill. 1986)..................................................................................13

*Francis v. Lee Enters., Inc.*
   971 P.2d 707 (Haw. 1999).............................................................................13, 14

*Kewin v. Mass. Mut. Life Ins. Co.*
   295 N.W.2d 50 (Mich. 1980)..............................................................................13

*Liberty Mut. Ins. Co. v. McKneely*
   862 So. 2d 530 (Miss. 2003)...............................................................................14

*Liparoto v. Gen. Shale Brick, Inc.*
   772 N.W.2d 801 (Mich. App. 2009)................................................................16, 17

*Monroe Guaranty Ins. Co. v. Backstage, Inc.*
   537 N.E.2d 528 (Ind. Ct. App. 1989)..................................................................19

*Nangle v. Farmers Ins. Co of Am.*
   205 Ariz. 517 (Ariz. Ct. App. 2003)....................................................................17

*Pitts v. Watkins*
   905 So. 2d 553 (Miss. Ct. App. 2005)..................................................................16

*Robinson v. S. Farm Bureau Cas. Co.*
   915 So. 2d 516 (Miss. App. 2005).......................................................................13

*Rogers v. State Farm Fire & Cas. Co.*
   984 So. 2d 382 (Ala. 2007).................................................................................19

*Rory v. Cont'l Ins. Co.*
   703 N.W.2d 23 (Mich. 2005)...............................................................................16

*Salesin v. State Farm Fire & Casualty Co.*
   581 N.W.2d 781 (Mich. App. 1998).................................................................20, 21

*Weidman v. Erie Ins. Group*
     745 N.E.2d 292 (Ind. App. 2001) ...................................................................................18, 22

*Zoppo v. Homestead Ins. Co.*
     644 N.E.2d 397 (Ohio 1994) ....................................................................................................14

*Zuckerman v. Transamerica Ins. Co.*
     650 P.2d 441 (Ariz. 1982)...........................................................................................................17

## STATUTES

28 U.S.C. § 1404...................................................................................................................................3

Ariz. Rev. Stat. Ann. § 20-1115 (West 2009)..............................................................................17

Miss. Code Ann. § 15-1-5 (West 2009)........................................................................................16

Miss. Code Ann. § 15-1-65 (West 2009)......................................................................................16

## RULES

Fed. R. Civ. P. 10(c) ............................................................................................................................5

Fed. R. Civ. P. 12(b)(6)......................................................................................................................3

Fed. R. Civ. P. 23.....................................................................................................................*passim*

## RESTATEMENTS

Restatement (Second) of Conflicts of Laws § 193 (1971).....................................................11, 12

Restatement (Second) of Conflicts of Laws § 221 (1971)..........................................................12

Defendant USAA Casualty Insurance Company ("USAA CIC") submits this memorandum in support of its motion to strike the class allegations pursuant to Fed. R. Civ. P. 23(d)(1)(D).

### Preliminary Statement

Keary and Phyllis Burger (the "Burgers" or "Plaintiffs") seek to represent a nationwide class of insureds who have received payments from USAA CIC for covered losses to their property since August 15, 1998, and who allegedly were entitled to but were not paid an additional amount intended to cover the cost of a general contractor's overhead and profit ("O&P"). (First Amended Class Action Complaint ("FAC") ¶ 131.)

USAA CIC files this motion to strike the class allegations in the FAC because Plaintiffs' class definition is so overbroad that, if certified, it would capture individuals who not only did not need, hire, or incur such costs to repair or replace their property, but also countless individuals whose potential claims expired years ago. To survive a motion to strike class allegations in this Circuit, a plaintiff must plead an objective and workable class whose members have standing to bring the causes of action alleged, and must allege facts demonstrating that the class is capable of meeting the requirements of Federal Rule of Civil Procedure 23. The class proposed in the FAC fails on both counts.

Here the Court would have to conduct individual inquiries into the merits of each potential class member's claims in order even to identify which insureds have the right to bring a claim. Moreover, the Court would have to conduct a complicated choice-of-law analysis to determine (i) whether the asserted causes of action are available under each state's laws, and, if so, the relevant elements, the necessary proof, the applicable burden of proof, and any available defenses, including applicable limitations periods; (ii) whether insureds are entitled to O&P under their home state's laws and, if so, when and how to calculate the appropriate amount of

damages in the relevant jurisdiction; and (ii) whether USAA CIC is entitled to enforce contractual "appraisal" provisions, which allow the parties to demand their claims be submitted to the binding determination of a two or three-member panel of appraisers prior to bringing suit. Even so, material conflicts exist between and among the 50 states' laws, such that the Court could not constitutionally apply Mississippi or any other state's law to all of the class claims.

The individualized fact inquiries necessary to adjudicate each proposed class member's claims would be equally problematic. The Court would have to review the policy, claim file, and any subsequent negotiations over the adjustment process for each individual class member in order to determine (i) whether USAA CIC has waived the right to enforce any applicable appraisal provisions, (ii) whether the nature of damage to each insured's property was extensive enough to have reasonably required the services of a general contractor, (iii) whether each insured actually used the services of a general contractor, and (iv) whether USAA CIC has any defenses unique to any proposed class member, such as limitations, settlement and release, failure to mitigate, and overpayment, just to name a few.

As a result, individualized issues of law and fact will necessarily predominate over any issues common to the proposed class, rendering class treatment unworkable and drastically inferior to individual lawsuits. Courts in this Circuit have routinely stricken class allegations when such defects are apparent from the complaint, and this Court should do so here, and allow this action to proceed if at all only on an individual basis.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Original Complaint

Plaintiffs filed their initial complaint ("Complaint") in this Court on April 15, 2009, asserting claims for negligence, gross negligence, and/or reckless disregard for rights of the plaintiffs, breach of contract, breach of the duty of good faith and fair dealing, bad faith, tortious

breach of contract, and waiver and estoppel.  (Docket No. 1.)  In the Complaint, Plaintiffs alleged

that USAA CIC improperly investigated, adjusted, and denied coverage for claims the Burgers

made under their USAA CIC homeowners insurance policy for damages incurred as a result of

Hurricane Katrina on August 29, 2005.  (*See id*.)  The Complaint did not include any allegations

regarding USAA CIC's alleged failure to pay general contractor's O & P.  (*See id*.)

The Complaint was the third complaint the Burgers filed concerning their Katrina claim,

but it was the first complaint to sue the entity that actually insured their home.  The Burgers' two

previous lawsuits were filed in state court in Mississippi and either wrongly named or served

USAA as the defendant, while the Burgers' homeowners insurance was issued by USAA CIC.

(*See* Docket No. 36, at Exhibits 3 & 4.)

On April 29, 2009, USAA CIC filed its answer to the Complaint, raising several defenses,

including failure to state a claim under Fed. R. Civ. P. 12(b)(6) and to transfer venue pursuant to

28 U.S.C. § 1404.  (Docket No. 8.)  On July 13, 2009, Plaintiffs filed a motion for leave to file an

amended complaint, which USAA CIC opposed.  (*See* Docket Nos. 28-29, 36, 39.)  On October

19, 2009, the Court granted the Plaintiffs' motion for leave to amend, which noted that USAA

CIC's arguments opposing the amendment would be more properly addressed on a motion to

dismiss.  (*See* Docket No. 44.)  Plaintiffs filed the FAC that same day.  (Docket No. 45.)

### B.    First Amended Class Action Complaint ("FAC")

In the FAC, the Burgers now seek to represent a national class of insureds extending back

nearly 11 years to August 15, 1998, who allegedly received dwelling loss payments from USAA

CIC[1] but did not receive compensation for general contractor's O & P.  (FAC ¶ 131.)

Alternatively, the Burgers seek certification of a Mississippi-only class.  (*Id*. ¶ 132.)  Plaintiffs

assert two causes of action on behalf of the class, tortious breach of contract and unjust

enrichment, both of which are based on Plaintiffs' claim that USAA CIC improperly failed to pay

the purported class O&P.  (*Id*. ¶¶ 148-162.)  Plaintiffs also plead that the doctrines of fraudulent

concealment and equitable estoppel should be applied to toll the statute of limitations for each

purported class member's claims, because, Plaintiffs' contend, USAA CIC concealed the

proposed class members' alleged entitlement to O&P.  (*Id*. ¶¶ 140-145.)

### C.    Documents Attached To The FAC

Plaintiffs have attached two documents to the FAC: (1) the USAA CIC homeowners

insurance policy for their property in Gulfport, Mississippi, effective August 6, 2005 to

August 6, 2006 ("the Policy" or "the Burgers' Policy"), and (2) the Repair/Replacement Cost

Statement itemizing the expenses for covered losses and the amount payable under their actual

cash value payment.  (Exs. A and B to FAC.)  Several provisions of these documents are relevant

to this motion.[2]

The Burgers' Policy states that USAA CIC will pay an insured, in relevant part, "no more

than the actual cash value of the damage unless: (a) actual repair or replacement is complete."

(Ex. A to FAC at USAA77 00222 ¶ 3(b)(4).)  The actual cash value provision allowed the

---

[1] Although the class allegations at paragraph 131 refer only to USAA, that company is not a defendant in this case. USAA CIC is the only defendant. The FAC does not add USAA as an additional party. For purposes of this motion, USAA CIC presumes Plaintiffs meant to reference it as the only defendant. If that is, however, incorrect, then USAA CIC objects to any attempted addition of USAA as a party. Plaintiffs only have standing to pursue class claims on behalf of individuals who purchased policies from USAA CIC. *See Aguilar v. Allstate Fire & Cas. Ins. Co.*, No. 06-4660, 2007 WL 734809, at *5 (E.D. La. 2007) ("The plaintiffs' concession that none of the named plaintiffs were insured by either Allstate Fire and Casualty or Allstate Property and Casualty is a concession that they lack standing to sue those defendants. And their attempts to establish Article III standing 'through the backdoor of a class action' is unavailing.") (citation omitted).

Burgers to "disregard the replacement cost loss settlement provisions and make claim under this policy for physical loss to buildings on an actual cash value basis" and "then make claims within 180 days after loss for any additional liability on a replacement cost basis." (*Id*. ¶ 3(b)(5).)  The replacement cost loss settlement provisions, alternatively, allowed the Burgers to replace or repair any damaged property and then receive the replacement cost without a deduction for depreciation, subject to certain limitations. (*Id*. ¶ 3(b)(1)-(3).)

USAA CIC provided the Burgers with a Repair/Replacement Cost Statement, dated February 6 and 7, 2006, which notified the Burgers that USAA CIC would not include contractor's O&P in the initial payment, and would only pay O&P as part of any Supplemental Payment if it was actually "incurred." (*See* Ex. B to FAC.)  In addition, the Repair/Replacement Cost Statement stated that to comply with the replacement cost provisions of the Policy, the Burgers should, upon completion of repairs, provide "[r]eceipts/bills from contractors or repair bills showing that repairs have been completed and indicating the amount paid for those repairs … within 180 days of the date of loss." (*Id*.)

## II.     PLAINTIFFS FAIL TO PLEAD AN ASCERTAINABLE CLASS

An ascertainable class is an implied prerequisite of Rule 23.  *DeBremaecker v. Short*, 433 F.2d 733 (5th Cir. 1970).  In order to state an ascertainable class, a plaintiff must plead an objective and workable class.  *See id*. at 734 ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable").  A class is not ascertainable when the class definition alleged includes individuals that have no right to bring the cause of action alleged.  *See Hedgepeth v. Blue Cross Blue Shield of Miss.*, No.

---

[2] The documents attached to the FAC are considered part of the pleading for all purposes pursuant to Fed. R. Civ. P. 10(c).

1:05CV142-D-A, 2006 WL 141624, at *2 (N.D. Miss. 2006) (granting motion to strike class allegations in purported class action asserting ERISA claims, where plaintiffs failed to adequately define class by including individuals with benefit plans not subject to ERISA). "Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings." *See John v. Nat'l Sec. Fire Ins. Co.*, 501 F.3d 443, 445 (5th Cir. 2008).

To ascertain who would be a member of the purported class in this case, the Court would have to conduct a detailed, claimant-by-claimant factual analysis. The Court would need to determine, at a minimum:

(1)     whether the insurance policy issued to the policyholder fits within the scope of the class;

(2)     whether O&P was included in the loss payment;

(3)     whether the policyholder elected to make the claim on an actual cash value basis or a replacement cost basis;

(4)     the nature and extent of the covered damage and the repairs needed to remedy the covered damage;

(5)     whether it would have been reasonable and necessary for the policyholder to use the services of a general contractor to complete repairs of the covered damage; and

(6)     whether the policyholder completed repairs on or replaced his covered property and used the services of a general contractor.

Not only would a detailed review of each claim file be required to answer these questions, but in most instances, a jury would need to hear evidence and resolve disputed issues of fact and law to identify who has the right to bring a claim for O&P. *See* Section III.A.3, *infra*, for a full description of the relevant law regarding whether an insured is entitled to receive O&P. Because the alleged class cannot be ascertained absent these individualized inquiries, the class

allegations contained in FAC are inappropriate for class treatment under Rule 23 and should be stricken.

## III.    PLAINTIFFS FAIL TO PLEAD A CLASS CAPABLE OF RULE 23 CERTIFICATION

Under Rule 23(d)(1)(D), the Court may strike class allegations when plaintiffs fail to plead facts establishing the existence of a class satisfying the prerequisites of Rule 23.  *See* Fed. R. Civ. P. 23(d)(1)(D); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 183 n.6 (1974) (Douglas, concurring, dissenting in part) ("Under Rule 23(d)[(1)(D)], the District Court may in some instances require that pleadings be amended to eliminate class allegations.").  Courts in this Circuit have routinely granted motions to strike in Hurricane Katrina cases where the pleadings demonstrate that individual issues will predominate over common issues, rendering a class action unworkable and inferior to individual suits.  *See*, *e.g.*, *Terrebonne v. Allstate Ins. Co.*, 251 F.R.D. 208, 210 (E.D. La. 2007); *In re Katrina Canal Breaches Consol. Litig.*, No. 05-4182, 2009 WL 1707923, at *8 (E.D. La. June 16, 2009); *Markey v. Louisiana Citizens Fair Plan*, No. 06-5473, 2008 WL 5427708, at *2 (E.D. La. Dec. 30, 2008) (citing cases in Fifth Circuit that have stricken class allegations under Rule 23(d)(1)(D), or its predecessor Rule 23(d)(4)); *Aguilar*, 2007 WL 734809, at *2; *Caruso v. Allstate Ins. Co.*, No. 06-2613, 2007 WL 2265100, at *2, *5 (E.D. La. Aug. 3, 2007); *Henry v. Allstate Ins. Co.*, No. 07-1738, 2007 WL 2287817, at * 2-4, *7 (E.D. La. Aug. 8, 2007); *Spiers v. Liberty Mut. Fire Ins. Co.*, No. 6-4493, 2006 WL 4764430, at *1-2 (E.D. La. Nov. 21, 2006).

In fact, numerous courts in this Circuit have held that striking the class allegations is appropriate when plaintiffs assert claims on behalf of a class of insureds who were not paid O&P, because individual inquiries would be necessary to determine whether each class member is entitled to receive a payment for O&P.  *See*, *e.g.*, *Nguyen v. St. Paul Travelers Ins. Co.*, No. CIV.

A 06-4130, 2008 WL 4534395 (E.D. La. Oct. 6, 2008) (striking class allegations in complaint asserting breach of contract and bad faith claims on behalf of class of Louisiana resident policyholders who suffered covered losses from Hurricanes Katrina or Rita but were not paid general contractor's O&P as part of their actual cash value payments); *Nguyen v. St. Paul Travelers Ins. Co.*, No. 06-4130, 2009 WL 23677, at *2 (E.D. La. Jan. 25, 2009) (denying motion for reconsideration and upholding decision to strike under 23(d)(1)(D)); *John v. Nat'l Sec. & Fire Cas. Co.*, No. 06-1407, 2008 WL 394220, at *2 (W.D. La. Feb. 12, 2008) (granting insurer's motion to strike class allegations in Complaint; "This Court finds that a case by case factual inquiry would have to be made regarding the type, nature and complexity of the necessary repairs before it can be determined if a general contractor is warranted.  Such an individualized inquiry would necessarily prevent this type of claim from being certified as a class."); *Jones v. Nat'l Sec. Fire & Cas. Co.*, No. 06-1407, 2006 WL 3228409, at *2-3 (W.D. La. Nov. 3, 2006) (striking class allegations in First Amended Complaint where factual inquiry necessary to determine whether needing more than one trade contractor warrants a general contractor and whether each putative class member's damages involved more than one trade).

In order to survive a motion to strike, a plaintiff bears the burden to show that all the requirements of Rule 23 are met.  *See Nguyen*, 2008 WL 4534395, at *7.  To meet this burden, a plaintiff must first show the class satisfies the threshold requirements of Rule 23(a).  *Id.* Specifically, Plaintiffs must plead facts to show the purported class: (1) is "so numerous that joinder of all members is impracticable"; (2) involves "questions of law or fact common to the class"; (3) includes class representatives with claims or defenses "typical ... of the class"; and (4) includes class representatives that "will fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a).

8

In addition, the class must satisfy one of the three subsections of Rule 23(b). *See Nguyen*, 2008 WL 4534395, at *7; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). It appears from the FAC that Plaintiffs intend to seek certification under Rule 23(b)(3). *See* FAC ¶¶ 134, 138.[3] Rule 23(b)(3) imposes two requirements that Plaintiffs must satisfy in addition to the Rule 23(a) requirements: predominance and superiority. "The predominance element requires a finding that common issues of law or fact 'predominate over any questions affecting only individual members.'" *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005) (citing Fed. R. Civ. P. 23(b)(3)). "This requirement, although reminiscent of the commonality requirement of Rule 23(a), is 'far more demanding' because it 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Id.* at 320 (quoting *Amchem*, 521 U.S. at 623-24). The superiority element requires that "a class action be superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Unger*, 401 F.3d at 320.

The FAC demonstrates that Plaintiffs cannot satisfy either of the predominance or superiority elements of Rule 23(b)(3).

---

[3] In fact, it is clear from the FAC that only Rule 23(b)(3) could possibly apply in this case. Plaintiffs cannot certify a class under Rule 23(b)(1). "Rule 23(b)(1)(A) 'takes in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners).' … Rule 23(b)(1)(B) includes, for example, 'limited fund' cases, instances in which numerous persons make claims against a fund insufficient to satisfy all claims." *Amchem*, 521 U.S. at 614. Plaintiffs' claims are not analogous to either situation. Plaintiffs also cannot certify a class under Rule 23(b)(2), since the primary relief they request is monetary. (*See* FAC at 31-32) (Prayer for Relief (Class Claims)); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 411 (5th Cir. 1998) ("[M]onetary relief may be obtained in a (b)(2) class action so long as the predominant relief sought is injunctive or declaratory."). In any event, to the extent Plaintiffs seek injunctive relief for USAA CIC's alleged failure to disclose the class members' alleged entitlement to O&P, such a claim is belied by a document Plaintiffs' attached to the FAC. (*See* Ex. B to FAC.) *See also* USAA CIC's Motion to Dismiss, filed concurrently herewith, at Section II.B.3.

## A.    Common Issues Of Law Do Not Predominate

In a multi-state class action, variations in state law may swamp any common issues and defeat predominance. *Castano v. Am. Tobacco Co., Inc.*, 84 F.3d 734, 741 (5th Cir. 1996). Consequently, "a district court's duty to determine whether the plaintiff has borne its burden on class certification requires that a court consider variations in state law when a class action involves multiple jurisdictions." *Id.* Therefore, the district court "must initially identify the substantive law issues which will control the outcome of the litigation," determine whether conflicting law exists, and, if necessary, conduct a choice-of-law analysis in order to make a threshold determination as to which state's or states' law applies to each putative class claim. *See id.*

### 1.    The Court cannot constitutionally apply Mississippi law to the claims of all class members.

"For a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981)). The Supreme Court's decision in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), is particularly instructive on the constitutional limitations on applying the law of the forum in a putative nationwide class action. There, the United States Supreme Court reversed a Kansas state court decision applying Kansas law to a putative nationwide class action involving an oil company's alleged breach of individual lease agreements with landowners throughout the country. *Id.* at 799. The state court's decision to apply its own state law to all class members was unconstitutional, the Supreme Court held, given variations among state laws, the expectations of out-of-state class members regarding choice-of-law, and the interests of other states in protecting their residents. *Id.* at 818-23. The Court

rejected as a "bootstrap argument" the Kansas court's premise that "the law of the forum should be applied unless compelling reasons exist for applying a different law," concluding that "application of Kansas law to every claim in this case is sufficiently arbitrary and unfair as to exceed constitutional limits." *Id*. at 821-22 (internal quotation omitted).  Instead of selecting its own law for purposes of convenience, the Court held, due process required the Kansas court to conduct a thorough choice-of-law analysis and consider the competing laws and interests of other states.  *Id*. at 822-23.

The Court must apply Mississippi choice-of-law rules in this case.  *See Cantu v. Jackson Nat. Life Ins. Co.*, 579 F.3d 434, 437 (5th Cir. 2009) (federal court sitting in diversity case must apply choice-of-law rules of forum state).  As shown below, Mississippi law differs in numerous respects from the laws of other states on the legal issues relevant to adjudicating the class claims. While Mississippi unquestionably has sufficient contacts to apply its substantive law to the claims of plaintiffs who, like the Burgers, reside in Mississippi and were issued their USAA CIC policy in Mississippi to insure property in that state, Mississippi does not have sufficient contacts such that its law can be applied constitutionally to the claims of putative class members who do not live in this state, were not issued their policies here, whose property is not located here, and whose home state laws relevant to this dispute differ from Mississippi.  *See Shutts*, 472 U.S. at 822; *Allstate*, 449 U.S. at 312-13.

> ### 2.    In the face of a conflict with Mississippi law, the Court must apply the law of the state in which the property covered by the homeowners policy issued by USAA CIC is located.

In Mississippi, where resolving the class members' claims involves the rights created by casualty insurance contracts, Section 193 of the Restatement (Second) of Conflicts of Law (1971), provides the starting point for the choice-of-law inquiry.  *See Boardman v. United Serv. Auto. Ass'n*, 470 So. 2d 1024, 1033 (Miss. 1985) (expressly adopting § 193).  Under § 193, the

rights created by a contract of casualty insurance are generally determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy. *Id.* (citing Restatement § 193 (Second) of Conflicts of Law (1971)). If, however, with respect to a particular issue, some other state has a more significant relationship to the transaction and the parties, the local law of the other state should be applied. *Id.* But the "central thrust" of § 193 is that the law applicable in actions on insurance contracts should be the law of the state the parties understood was to be the principal location of the risk. *Id.* Because the unjust enrichment claims are also based on the rights allegedly created by the contracts between USAA CIC and the proposed class, the law of the state governing the contract claims should also govern their unjust enrichment claims. *See* Restatement (Second) of Conflicts of Laws § 221 cmt. d (1971). Therefore, the "principal location of the insured risk" rule applies to both claims.

Moreover, Mississippi courts apply the choice-of-law analysis on an issue-by-issue basis. *Boardman*, 470 So. 2d at 1031 ("We apply the center of gravity test to each question presented, recognizing that the answer produced in some instances may be that the law of this state applies and on other questions in the same case the substantive law of another state may be enforceable."). Thus, for any issue on which the law of the state where an insured's property was located differs from Mississippi law, this Court must apply that state's law. *See Shutts*, 472 U.S. at 822.

> ### 3.   Material differences between the applicable states' laws prevent certification of a national class.

Plaintiffs purport to assert claims on behalf of a nationwide group of USAA CIC insureds. (*See* FAC ¶ 133 ("The Class comprises thousands of individuals who are geographically dispersed across the United States and across Mississippi.").) Therefore, all 50

states' laws are implicated by the alleged class. Plaintiffs simply cannot show that common

issues of law would predominate when all 50 states' laws must be considered.

As an initial matter, the laws regarding tortious breach of contract and unjust enrichment

differ in material ways from jurisdiction to jurisdiction. For example, tortious breach of contract

is a cognizable cause of action against an insurer in Mississippi. *See Robinson v. S. Farm Bureau*

*Cas. Co.*, 915 So. 2d 516, 520 (Miss. App. 2005) ("A tortious breach of contract is a breach of

contract coupled with 'some intentional wrong, insult, abuse, or negligence so gross as to

constitute an independent tort.'") (citations omitted). However, the availability of an action for

"tortious breach of contract" varies greatly among jurisdictions. Many states do not recognize

any cause of action for "tortious breach of contract." *See, e.g.*, *Kewin v. Mass. Mut. Life Ins. Co.*,

295 N.W.2d 50, 56 (Mich. 1980) ("We decline . . . to declare the mere bad-faith breach of an

insurance indemnity contract an independent and separately actionable tort and to thereby open

the door to recovery for mental pain and suffering caused by breach of a commercial contract.");

*Chandler v. Prudential Ins. Co.*, 715 S.W.2d 615, 619-21 (Tenn. Ct. App. 1986) (holding that

Tennessee does not recognize a tort action for bad faith of first party insurer in view of statutory

extracontractual remedy for bad faith); *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 904 (Ill.

1986) (same in Illinois).

Other states recognize certain torts that may apply to the conduct of first-party insurers

but expressly do not recognize "tortious breach of contract." For example, Hawaii recognizes

the "tort of bad faith" by an insurer, but specifies that this action is different from a "tortious

breach of contract," which it does not recognize. *Best Place, Inc. v. Penn Am. Ins. Co.*, 920 P.2d

334, 345 (Haw. 1996); *see Francis v. Lee Enters., Inc.*, 971 P.2d 707, 710-12, 717 (Haw. 1999)

("Hawaii law will not allow a recovery in tort, including a recovery of punitive damages, in the

absence of conduct that (1) violates a duty that is independently recognized by principles of tort law and (2) transcends the breach of the contract."). Wisconsin law similarly recognizes a breach of an insurer's duty of good faith as a "tort of bad faith" but regards the term "tortious breach of contract" as "confusing and inappropriate." *Anderson v. Cont'l Ins. Co.*, 271 N.W.2d 368, 374 (Wis. 1978). To make matters even more confusing, Mississippi also recognizes a tort of bad faith in the context of insurance, separate from the "tortious breach of contract." *See Liberty Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 533 (Miss. 2003) (to prove bad faith "the plaintiff must show that the insurer lacked an arguable or legitimate basis for denying the claim, or that the insurer committed a willful [sic] or malicious wrong, or acted with gross and reckless disregard for the insured's rights").

Furthermore, even if all of these various bad-faith actions could somehow be considered analogous to "tortious breach of contract" for purposes of class certification, the states formulate and apply these causes of action in contradictory ways. Just a sample proves the point. In Wisconsin, the tort of bad faith includes both subjective and objective components: a plaintiff must show the absence of a reasonable basis for denying benefits and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for the denial. *Id.* Under Ohio law, however, the cause of action for an insurer's breach of its duty of good faith to an insured requires only a showing of failure to pay a claim "without reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 400 (Ohio 1994). "Intent is not and has never been an element of the reasonable justification standard." *Id.* In addition, both the Wisconsin and Ohio standards differ significantly from the aforementioned Mississippi standards for tortious breach of contract and for the tort of bad faith. Given these contradictions, any attempt to create a national class action based upon a cause of action for "tortious breach of contract"

14

must fail due to the unavailability of this claim in some jurisdictions and the impossibility of applying the contradictory standards of the remaining states to the same claim.

Plaintiffs' unjust enrichment claim suffers from the same defect. In fact, courts across the country have routinely denied certification in putative multi-state class actions based on unjust enrichment claims due to the wide discrepancies in state laws' regarding the availability of unjust enrichment claims, as well as the elements and burden of proof required to prove them. *See*, *e.g.*, *Thompson v. Bayer Corp.*, No. 4:07CV00017, 2009 WL 362982, at *4-6 (E.D. Ark. Feb. 12, 2009) (denying motion for class certification; "After an extensive review of the law, the Court finds that the states' different approaches to, or elements of, unjust enrichment are significant."); *In re Conagra Peanut Butter Prod. Liab. Litig.*, 251 F.R.D. 689, 697 (N.D. Ga. 2008) (providing detailed analysis of state law variations on unjust enrichment and explaining "[t]his morass is useful to establish not only the lack of uniformity of unjust enrichment claims across the country, but also the inferiority of class-wide resolution due to discerning the many differing legal standards"); *Vulcan Golf, LLC. v. Google, Inc.*, 254 F.R.D. 521, 533-34 (N.D. Ill. 2008) (finding "the significant weight of authority" demonstrates that "the differences in the unjust enrichment laws are sufficiently substantive to preclude class certification."); *Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 626 (D. Kan. 2008) ("Some states preclude [unjust enrichment] claims when an adequate legal remedy is available, and many states say the existence of an enforceable contract will preclude an unjust enrichment claim. Because of such variations, federal courts have generally refused to certify a nationwide class based upon a theory of unjust enrichment."); *Rivera v. Bio Engineered Supplements & Nutrition, Inc.*, No. SACV 07-1306 JVS (RNBx), 2008 WL 4906433, at *3-4 (C.D. Cal. Nov. 13, 2008) (declining to certify nationwide class asserting

unjust enrichment claims because of "material differences" among the 50 states with regard to the law of unjust enrichment).

Determining whether the class members' claims are timely will present the same problem. Mississippi's borrowing statute, codified at Miss. Code Ann. § 15-1-65 (West 2009), mandates that the Court determine where and when a proposed class member's claim accrued and apply the appropriate limitations period of that jurisdiction for each individual. *See* USAA CIC's motion to dismiss, filed concurrently herewith, at Section II.B.5. However, the enforceability of contract provisions purporting to change the usual limitations period varies among jurisdictions. In Mississippi, a statute provides that the applicable limitations period "may not be changed in any way whatsoever by contract between parties, and any change in such limitations made by any contracts stipulation [sic] whatsoever shall be absolutely null and void." Miss. Code Ann. § 15-1-5 (West 2009). Accordingly, Mississippi courts have been vigilant in enforcing this rule. *See*, *e.g.*, *Pitts v. Watkins*, 905 So. 2d 553, 558 (Miss. Ct. App. 2005) (finding that a contractual provision purporting to reduce the applicable limitations period from three years to one year "is oppressive, violates statutory law and is likewise unconscionable").

Other jurisdictions are less hostile to such contractual limitation provisions. For example, Michigan law provides that, in most instances, a contractual agreement to reduce the applicable limitations period "is to be enforced as written unless the provision violates the law or public policy or is otherwise unenforceable under traditional contract defenses, including duress, waiver, estoppel, fraud, or unconscionability." *Liparoto v. Gen. Shale Brick, Inc.*, 772 N.W.2d 801, 805 (Mich. App. 2009); *see also Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 32 (Mich. 2005) (noting the narrow statutory exception for life insurance policies). The party seeking to invalidate such a provision must demonstrate both procedural and substantive unconscionability.

*Liparoto*, 772 N.W.2d at 806 (holding that plaintiff failed to carry its burden regarding either prong of the unconscionability test).  Applying this standard, Michigan courts have recently upheld contractual provisions that reduce the time period for bringing legal actions.  *See id.* at 805-06; *Clark v. DaimlerChrysler Corp.*, 706 N.W.2d 471, 473-75 (Mich. App. 2005).

Meanwhile, Arizona has adopted another approach to contractual limitation provisions in which insurance policies are treated differently from other contracts.  An Arizona statute invalidates any insurance contract provision that would reduce the applicable limitations period to less than two years from the date on which the action accrued.  Ariz. Rev. Stat. Ann. § 20-1115 (West 2009).  The statute provides an exception for property, marine, and transportation insurance policies, whose limitations period is fixed at one year following the date of the event resulting in the loss unless extended by the insurer.  *Id.*  In contrast to other state courts, Arizona courts have complicated this analysis by introducing an equitable exception preventing enforcement of certain insurance limitation provisions that otherwise comply with the statute. *See Nangle v. Farmers Ins. Co of Am.*, 205 Ariz. 517, 521 (Ariz. Ct. App. 2003) (reversing summary judgment on limitations issue due to lack of prejudice to defendant); *Zuckerman v. Transamerica Ins. Co.*, 650 P.2d 441, 446-48 (Ariz. 1982) (refusing to enforce clause due to inequity that would result).  In light of these conflicts inherent in the different approaches of the states to contractual limitation periods, no uniform rule of law could possibly be applied to any national class of litigants on this issue.

States' laws also vary with respect to whether and, if so, when and how to determine if an insured is entitled to an O&P payment.  Some courts have held that O&P need not be paid unless and until repair or replacement is completed and the insured incurs the cost of a general contractor's O&P.  *See Snellen v. State Farm Fire & Cas. Co.*, 675 F. Supp. 1064, 1066-68 (W.D.

Ky 1987) (holding that O&P was properly deducted from actual cash value payment when insured "has neither repaired nor replaced her home nor evidenced any intention to do so"); *Weidman v. Erie Ins. Group*, 745 N.E.2d 292, 298 (Ind. App. 2001) ("before a settlement can be reached under either the replacement cost or actual cash value provisions of the policy, [insured] must prove what he expended, including his own labor and costs, and that those expenses were necessary").  Other courts have found that an insurer must pay O&P as part of an upfront payment to the insured if the services of a general contractor are reasonably likely to be incurred in making the repairs, even if the repairs are never made.  *See*, *e.g.*, *Nguyen*, 2008 WL 4534395, at *5; *Nguyen*, 2009 WL 23677, at *3 (denying motion for reconsideration); *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1306 (11th Cir. 2008); *Parkway Assoc. LLC v. Harleysville Mut. Ins. Co.*, 129 Fed. App'x. 955, 962 (6th Cir. 2005).  Because each state has its own insurance department, code, and regulations, the Court will also be required to determine whether any state has issued pronouncements or laws that should be factored into the O&P determination.  *See Peoples v. Am. Fidelity Life Ins. Co.*, 176 F.R.D. 637, 642 (N.D. Fla. 1998) ("In this case … the necessity of applying the substantive law of multiple jurisdictions would render class certification counterproductive.  There is no federal insurance code; each State has its own insurance code, as well as its own Department of Insurance which in turn has its own administrative regulations.").  For any proposed class member whose home state has yet to consider the issue, the Court must make an "*Erie* guess" to determine what O&P rule to apply.  *See Castano*, 84 F.3d at 747 (noting manageability problems in multi-state class actions include the need for "*Erie* guesses").

Finally, the Court must determine whether any of the purported class members' home states would allow USAA CIC to enforce its appraisal provisions as condition precedent to suit.

Plaintiffs' Policy includes a provision allowing either USAA CIC or the insured to invoke an appraisal process to resolve contested valuation issues.  (Ex. A to FAC at USAA77 00222 ¶ 5.) If other members of the proposed class have policies containing the same or a similar provision, the Court must consider whether USAA CIC is entitled to enforce the provision under the law of each insured's home state because the standard for determining whether an appraisal provision is waived differs from state to state.  Mississippi, apparently, has yet to announce a specific test. *See Norwicz v. Markel Int'l Ins. Co.*, No. 1:08CV602, 2009 WL 2500195, at *3-4 (S.D. Miss. 2009).  In Alabama, a party waives its appraisal right if it "substantially invokes the litigation process and thereby substantially prejudices" the opposing party.  *Rogers v. State Farm Fire & Cas. Co.*, 984 So. 2d 382, 387 (Ala. 2007) (holding that, although insurer first raised appraisal 18 months after suit was filed, insured had not met "heavy burden" to show substantial prejudice). In Indiana, "a party waives the right to demand appraisal if: (1) good-faith negotiations concerning the amount of the loss ceased, and (2) prejudice resulted from the delay in demanding appraisal."  *Monroe Guaranty Ins. Co. v. Backstage, Inc.*, 537 N.E.2d 528, 529 (Ind. Ct. App. 1989) (holding that a six-month delay between end of good-faith negotiations and insurer's appraisal demand did not constitute waiver where no evidence of prejudice to insured was shown).  Given these differences, the Court would be required to apply the law on appraisal and waiver of the state in which each potential class member's property is located.

The material differences in state law on the issues relevant to this dispute create an insurmountable barrier to certification of a national class.  Individualized issues of law far outweigh any issues shared by the proposed class.  For this reason, the Court should strike the national class allegations from the FAC.

### B.    Common Issues Of Fact Do Not Predominate

The Fifth Circuit has held that in order to adequately consider whether common issues will predominate, district courts must consider how the claims would be tried, individually or on a class basis. *Castano*, 84 F.3d at 740, 744. To determine liability in this case, the Court will be required to inquire into the adjustment, claim, payment, and settlement processes for each proposed class member. Consequently, individual issues of fact will necessarily swamp any common issues rendering certification of either a national or Mississippi-only class impossible. Indeed, Judge Duval of the Eastern District of Louisiana recently noted that "it appears unlikely that any insurance adjustment-based claim could survive current Fifth Circuit class action law." *See Schafer v. State Farm Fire & Cas. Co.*, No. 06-8262, 2009 WL 2391238, at *8 (E.D. La. Aug. 3, 2009) (denying motion for class certification in case asserting breach of contract claims on behalf of Hurricane Katrina victims, claiming insurer failed to pay market prices for repairs).

Here, the Court will have to first consider whether USAA CIC is entitled to demand that any proposed class members submit to the appraisal process, by analyzing each insured's policy provisions, claim history, and, if applicable, settlement history. *See* Section III.A.3, *supra* (discussing variation in state law on enforcement and waiver of appraisal rights). Certification is inappropriate for this reason as well. *See Salesin v. State Farm Fire & Casualty Co.*, 581 N.W.2d 781, (Mich. App. 1998) (analyzing appraisal provision in homeowners policy, which court called "arbitration" provision; "While State Farm waived the right to arbitrate, it does not necessarily follow that State Farm would do so in all other cases. This could reasonably be considered by the trial court as tending to support a conclusion that class certification should be denied on the basis of [the superiority factor under Michigan procedure], because maintenance of a class action in the trial court would not be superior to settling disputes between State Farm and other insureds by means of arbitration.").

For any proposed class members who can litigate their claims, the Court will next have to consider whether they are entitled to an O&P payment. Class actions based on alleged failure to pay or underpayment of O&P have been particularly unsuccessful in this Circuit. Courts in the Fifth Circuit have steadfastly held that determining whether the nature of an insured's property damage indicates that he or she is reasonably likely to require the services of a general contractor is a factual question, requiring individualized assessments that will predominate over any common issues. *See, e.g.*, *Nguyen*, 2008 WL 4534395, at *9; *Nguyen*, 2009 WL 23677, at *2; *John*, 2008 WL 394220, at *2; *Jones*, 2006 WL 3228409, at *2-3; *Nguyen v. St. Paul Travelers Ins. Co.*, No. 06-4130, 2008 WL 4691685, at *6 (E.D. La. Oct. 22, 2008). Factors such as the nature and extent of the damage to each proposed class member's property, the number of trades and the complexity of the work needed to make the repairs must be considered. *See John*, 2008 WL 394220, at *2. An example provided in a recent case is illustrative:

> In a case where the insured suffered roof damage during Hurricane Katrina, the damage might require roof repairs, repairs to ceiling panels, and repairs to carpet damage. This indicates that three separate trades would be required, including a roofer, handyman, and carpet company. Standard Fire contends that an insured would not require a general contractor to coordinate this work. On the other hand, extensive damage to the roof of a large commercial building might be the type of job that would require roofers alone, but would still require the supervision of a general contractor because of the complexity and scope of the work.

*See Nguyen*, 2008 WL 4534395, at *9. The court held that "[t]he determination of whether the services of a general contractor would be reasonably likely to be required in these two examples is a fact question, that will be different for every insured." *Id.* In this case, the exact same individualized determinations will have to be made for each member of the proposed class.

The factual variations don't end there. Even if the Court were to find that some members of the proposed class have viable claims, it must also consider whether USAA CIC has defenses

to any claims on an individual basis.  For example, if an insured did not complete any repairs, USAA CIC may not need to pay O&P.  *See e.g.*, *Snellen*, 675 F. Supp. at 1066-68 (holding that O&P was properly deducted from actual cash value payment when insured "has neither repaired nor replaced her home nor evidenced any intention to do so"); *Weidman*, 745 N.E.2d at 298 ("before a settlement can be reached under either the replacement cost or actual cash value provisions of the policy, [insured] must prove what he expended, including his own labor and costs, and that those expenses were necessary").  Likewise, if USAA CIC overpaid a claim to any insured, USAA CIC need not pay O&P because the insured has not been damaged by the failure to pay.  *Cf Nguyen*, 2008 WL 4691685, at *6 ("If it is true that State Farm paid GCO & P for some putative class members when the nature of the individual's damages did not require the services of a general contractor, the individual would not have suffered any damages from an alleged underpayment of GCO & P.").

USAA CIC may have other defenses, such as failure to mitigate damages, settlement and/or release, which will also require individualized inquiries.  *See Unity Commc'ns, Inc. v. AT&T Mobility, LLC*, ---F. Supp. 2d---, No. 2:03cv115KS-MTP, 2009 WL 2169199, *2 (S.D. Miss. 2009) (defendant can move for summary judgment on affirmative defense of release); *Bank One, Tex. & Fed. Deposit Ins. Corp. v. Taylor v. Worth Operating, Inc.*, 970 F.2d 16, 29 (5th Cir. 1992) (party who fails to mitigate damages may not recover those damages shown to have resulted from failure to use reasonable efforts to avoid or prevent loss).

Plaintiffs' class allegations implicate myriad fact issues that simply cannot be tried on a class-wide basis, be it a national or Mississippi-only class.  Individualized issues of fact far outnumber any issues common to the proposed class.  Therefore, the Court should strike the class allegations from the FAC.

### C.    A Class Action Is Not A Superior Mode of Adjudication

The court also must determine whether the class action would be manageable and, thus, superior to individual suits.  *Castano*, 84 F.3d at 741, 744.  Plaintiffs cannot show that a class action is the superior mode of adjudication here.  The vast discrepancies in states' laws on the asserted class claims, the insureds' entitlement to O&P, and USAA CIC's appraisal rights, coupled with the need for individualized factual determinations on each of these issues, make class-wide treatment wholly unworkable in this case.  *See id*. at 744 ("The complexity of the choice of law inquiry also makes individual adjudication superior to class treatment."); *Allen-Wright v. Allstate Ins. Co.*, No. 07-cv-4087, 2008 WL 5336701, at *7 (E.D. Pa. Dec. 17, 2008) ("Where a court finds that a lack of predominance, as we do here, it is often the case that the court also finds a class action is not the superior method of litigation.").

The FAC does not allege facts establishing the existence of a class which can satisfy the prerequisites of Rule 23.  Consequently, the Court should strike the class allegations in the FAC, and allow this action to proceed, to the extent any claims remain, on an individual basis.

### *Conclusion*

USAA CIC's Motion To Strike the Class Action Allegations in Plaintiffs' First Amended Complaint should be granted.

Respectfully submitted, this 2nd day of December, 2009.

USAA CASUALTY INSURANCE COMPANY


By:    s/James D. Boone
       CHARLES G. COPELAND (MBN 6516)
       W. SHAN THOMPSON (MBN 9445)
       JANET ARNOLD (MBN 1626)
       JAMES D. BOONE (MBN 102377)

COPELAND, COOK, TAYLOR AND BUSH, P.A.
1076 Highland Colony Parkway
600 Concourse, Suite 100 - 39157
Post Office Box 6020
Ridgeland, MS 39158
Telephone: (601) 856-7200
Facsimile: (601) 856-7626

ATTORNEYS FOR DEFENDANT

## <u>CERTIFICATE OF SERVICE</u>

I, James D. Boone, do hereby certify that I have this date electronically filed the

foregoing document with the Clerk of the Court using the ECF system which sent notification of

such filing to the following:

Don Barrett, Esq.
BARRETT LAW OFFICE
P.O. Box 987
Lexington, MS 39095

Dewitt M. Lovelace, Esq.
Alex Peet, Esq.
LOVELACE LAW FIRM, P.A.
36474 Emerald Coast Parkway, Suite 4202
Destin, FL 32541

Thomas P. Thrash, Esq.
THRASH LAW FIRM
101 Garland Street
Little Rock, AR 72201-1214

This the 2nd day of December, 2009.

s/James D. Boone
JAMES D. BOONE